## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**FILED**

UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

JAN 0 6 2003

*[signature]* R. But mmarsh
CLERK

**JOANNE BAILEY, SHEA BARNES,**
**IDA BERG, THERESA BURROLA,**
**BERTHA COAN, ALVIN HAWKINSON,**
**MICHAEL HEREDIA, LOJANN HOOEE,**
**ANDREW JAMES, FRANK LYONS,**
**LARSON ROGERS, CYNTHIA VARGAS,**
and **CHRISTOPHER WEBB,**

      Plaintiffs,

vs.

      No.   **CIV 00-0005 MCA/DJS**

**CORRECTIONAL SERVICES CORPORATION,**

      Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court pursuant to *Defendant's Motion to Strike Plaintiffs' Supplemental Affidavits* (Doc. No. 188); *Correctional Services Corporation's Motion to Dismiss and for Summary Judgment* (Doc. No. 89); *CSC's Motion for Summary Judgment Against Plaintiffs Frederick Lewis and Michael Heredia* (Doc. No. 48); and *Defendant's Motion to Dismiss Ida Berg's Complaint or, Alternatively, to Strike Evidence and Compel Response to Defendant's First Set of Discovery or for Dismissal* (Doc. No.175). The Court, having reviewed the submissions of the parties, the relevant law, and otherwise being fully advised in the premises, finds that grounds exist for denying *Defendant's' Motion to Strike Plaintiffs' Supplementary Affidavits*; granting in part and denying in part Defendant *Correctional Services Corporation's Motion to Dismiss and for Summary Judgment*; denying in part *CSC's Motion for Summary*



*Judgment Against Plaintiffs Frederick Lewis and Michael Heredia*; and denying in part *Defendants' Motion to Dismiss Ida Berg's Complaint or, alternatively, to Strike Evidence and Compel Responses to Defendant's First Set of Discovery or for Dismissal* in so far as it relates to compel Defendant's first set of discovery.

## I.    **BACKGROUND**

Plaintiffs Joanne Bailey, Shea Barnes, Ida Berg, Theresa Burrola, Bertha Coan, Sheila Dunham, Alvin Hawkinson, Michael Heredia, Lojann Hooee, Andrew James, Frederick Lewis, Frank Lyons, Larson Rogers, Cynthia Vargas, and Christopher Webb allegedly are former employees of Defendant Correctional Services Corporation. On January 3, 2000, Plaintiffs filed the present law suit against Defendant.  The incidents that gave rise to the present lawsuit occurred between 1997 and 1998.  During this time, Defendant hired and terminated various Plaintiffs. Plaintiffs Bailey, Coan, Rogers, Vargas, and Webb were employed as correctional officers. Plaintiffs Barnes and Heredia were employed as counselors.  Plaintiffs Berg, Hawkinson, and James were employed as nurses.  Plaintiff Lyons was employed as the Food Services Director and Plaintiff Burrola was employed as a cook.  Plaintiffs Dunham and Lewis were previously dismissed from the lawsuit. (Doc. No. 84, 163.) Plaintiff Hooee failed to respond to Defendant's motion to dismiss and for summary judgment, and summary judgment is therefore granted as to Plaintiff Hooee.

Defendant is a Delaware corporation with its principal place of business in Florida. Defendant entered into an agreement with the County of McKinley (County) to operate, maintain, and manage the McKinley County Adult Detention Center (jail). (Compl. ¶ 9).  Under the terms of the contract between Defendant and the County, the County paid Defendant a certain amount per inmate per day. Defendant also contracted with other jurisdictions, including Bernalillo County, the

State of Montana, and the State of Oregon to house their inmates at the County jail. All Plaintiffs, with the exception of Rogers, allege that under the various contracts, Defendant agreed to house violent felony offenders at the jail. Plaintiffs also allege that Defendant housed more inmates than the facility could hold. Plaintiffs allege that they complained about overcrowding, poor conditions, inadequate staffing, and lapses in security at the jail. They also allege that they complained about the lack of kitchen equipment and medical equipment at the facility. They contend that Defendant terminated them in retaliation for their numerous complaints regarding the conditions at the facility. Plaintiffs also contend that Defendant and its representatives promised them permanent employment. Plaintiffs further allege that Defendant promised paid vacations, sick leave, dental insurance, medical insurance, eye care, a 401(K) plan, stock options, educational benefits, and compensation time for working through the holidays. Plaintiff Rogers further contends that he was discharged because he reported to his superior some rumors he heard about Bob Bass' perjury. At all relevant times, Bob Bass was the facility administrator.

Plaintiffs claim relief under state law theories of retaliatory discharge, breach of implied contract, breach of implied contract for good faith and fair dealing, fraud, constructive fraud, defamation, intentional infliction of emotional distress, and prima facie tort. They claim federal jurisdiction through diversity.

## II.   DISCUSSION

### A.   Standard of Review

Dismissal of a complaint under Fed. R. Civ. P. 12(b)(6) is appropriate only if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th

Cir.1997) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir.1991). Accordingly, all well-pleaded factual allegations in the complaint are accepted as true and viewed in the light most favorable to the nonmoving party. GFF Corp., 130 F.3d at 1384.

To the extent that Defendant's motion refers to other material outside of the pleadings, the motion is reviewed as one for summary judgment pursuant to Fed. R. Civ. P. 56. See Fed. R. Civ. P. 12(b). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of fact is "material" if it is essential to the proper disposition of the claim. See id. Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This burden may be met by showing that there is a lack of evidence to support the non-moving party's case. See id. at 325. Once the moving party has properly supported its motion for summary judgment, the burden shifts to the non-moving party to show that there is a genuine issue of material fact left for trial. See

Anderson, 477 U.S. at 256.  A party opposing a properly-supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.  See id.  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly-supported motion for summary judgment.  See id.  Any evidence tending to show triable issues will be viewed in the light most favorable to the non-moving party.  See Black Hills Aviation, Inc. v. United States, 34 F.3d 968, 972 (10th Cir. 1994).

### B.    Defendant's Motion to Strike Plaintiffs' Supplementary Affidavits

The Court will first address a preliminary procedural matter.  Defendant filed a motion to strike supplemental affidavits of all Plaintiffs and William Stripp, Plaintiffs' counsel.  Defendant contends that these supplementary affidavits were filed to create sham issues of fact.  Defendant also argues that Plaintiffs filed these affidavits without the prior approval of the Court.

While the better practice is to seek prior approval before filing supplementary affidavits regarding a motion that has been fully briefed, see D.N.M. LR-Civ. 7.6(b), in this case Defendant attached additional evidence to several of its reply briefs.  Under the circumstances, the interests of justice weigh in favor of affording Plaintiffs an opportunity to respond with supplementary affidavits.  See Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1163-65 (10th Cir. 1998).

Further, an affidavit may not be disregarded because it conflicts with the affiant's prior testimony.  See Franks v. Nimmo, 796 F.2d 1230, 1237 (10th Cir. 1986).  In assessing the conflict under a set of circumstances, the courts will disregard a contrary affidavit when they conclude that it constitutes an attempt to create a sham fact issue.  See id.  Factors relevant to the existence of a sham issue of fact include whether the affiant was cross-examined during his earlier testimony,

-5-

whether affiant had access to the pertinent evidence at the time of his earlier testimony, or whether the affidavit was based upon the newly-discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain.  See id. (holding that the plaintiff's later affidavit creates a sham fact because it contradicts plaintiff's earlier cross-examined testimony and because it lacked any explanation for such contradiction, even though the plaintiff had access to relevant evidence at that time).  Further, in determining whether a material issue of fact exists, an affidavit may not be disregarded because it conflicts with an affiant's prior sworn testimony.  See id. (citing C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 2738 at 473-74 (2nd ed. 1983)).  In considering a motion for summary judgment, a district court must consider all the evidence before it, and cannot disregard a party's affidavit merely because it conflicts to some degree with an earlier deposition.  See e. g., Camerlin v. N.Y. Cent. R.R. Co., 199 F.2d 698, 701 (1st Cir. 1952); Adams v. United States, 392 F. Supp. 1272, 1274 (E.D. Wis. 1975).  In the present case, Plaintiffs did not completely contradict their earlier affidavits or interrogatories.  Rather, they presented a detailed account of facts in the second or supplementary affidavit which expanded upon prior allegations.  In reviewing the supplemental affidavits, the Court concludes that no grounds exist for striking the affidavits.  The motion to strike is thus denied.

C. **Correctional Services Corporation's Motion to Dismiss and for Summary Judgment**

1. **Employment At-Will Doctrine**

The general rule in New Mexico is that an employment contract is for an indefinite period and is terminable at the will of either party, unless the contract is supported by consideration beyond the performance of duties and payment of wages, or there is an express contractual provision stating otherwise.  See Hartbarger v. Frank Paxton Co., 115 N.M. 665, 668, 857 P.2d 776, 779 (1993).

Thus, an at-will employment relationship can be terminated by either party, at any time, for any reason, or no reason, without liability. See id. New Mexico courts have recognized two exceptions to the general rule of at-will employment: (1) wrongful discharge in violation of public policy (retaliatory discharge); and (2) an implied contract term that restricts the employer's power to discharge. See id. These exceptions under New Mexico law are discussed below.

###### a.   Implied Contract

Under New Mexico law, an employer creates an implied contract of employment where its words and actions create a reasonable expectation of termination only for cause. See Hartbarger, 115 N.M. at 668, 857 P.2d at 779. The reasonableness of an expectation is measured by how definite, specific, or explicit has been the representation or conduct relied upon. See id. at 672, 857 P.2d at 783. A promise or offer that supports an implied contract might be found in written representations, such as an employee handbook, in oral representations, in the conduct of the parties, or in a combination of representations and conduct. See id. at 669, 857 P.2d at 780. The question of whether an employment relationship has been modified is a question of fact. See id. If an employer chooses to issue a policy statement in a policy manual or otherwise, and by its language or by the employer's actions, encourages reliance thereon, the employer cannot be free to selectively abide by it. See Newberry v. Allied Stores, Inc., 108 N.M. 424, 427, 773 P.2d 1231, 1234 (1989) (upholding findings of implied contract based on employee manual, words, and conduct of the parties). The totality of the parties' relationship, circumstances, and objectives will be considered to overcome the presumption that the employment contract was terminable at will. See id.; Kestenbaum v. Pennzoil Co., 108 N.M. 20, 26, 766 P.2d 280, 286 (1988) (holding that there was substantial evidence to support a jury finding of an implied employment contract when the

supervisor during the initial employment negotiations made it clear that the employment would be long term and permanent if the employee did his job; employee testified that he would not have considered the job if offered on a short term basis; and other employees testified that employer did not maintain a fire-at-will management practice). The New Mexico courts will not find an implied contract for cases in which the alleged promise by the employer is not sufficiently explicit. See Garrity v. Overland Sheepskin Co., 121 N.M. 710, 713, 917 P.2d 1382, 1385 (1996) (quoting Hartbarger, 115 N.M. at 669, 857 P.2d at 780); Shull v. N.M. Potash Corp., 111 N.M. 132, 134, 802 P.2d 641, 643 (1990) (affirming summary judgment in favor of the employer where employee had no bargained-for expectations and employee handbook did nothing to alter the at-will relationship). When a prospective employee inquires about job security and the employer agrees that the employee shall be employed so long as he does the job, a fair construction is that the employer has agreed to give up his right to discharge at will and may discharge only for a good cause. See Newberry, 108 N.M. at 25, 766 P.2d at 285 (citing Toussaint v. Blue Cross & Blue Shield, 292 N.W.2d 880, 884 (Mich. 1980)).

In the present case, Plaintiffs Coan and Burrola are not pursuing claims of implied contract and, therefore, the Court will treat these Plaintiffs' implied contract claims as voluntarily withdrawn. Plaintiffs Barnes, Bailey, Webb, Vargas, Hawkinson, and Berg signed an employment application which states, and in which they acknowledge, that their employment with Defendant is an at-will employment. These Plaintiffs also received an employee handbook, which alerts them that employees, as well as employers, are free to terminate employment with the company at any time. Two chapters in the handbook mention that the employment is at-will. All of these Plaintiffs, except Barnes, also signed a document titled "Employment at will" which states that both employees and

-8-

Correctional Services Corporation are free to terminate employment any time. Plaintiff Berg contends that she was forced to sign such an at-will acknowledgment. (Aff. Berg ¶ 3). However, it is undisputed that all these Plaintiffs signed the employment application and received the handbook. These documents served to alert these Plaintiffs as to their at-will status. Although the personnel file of Plaintiffs Lyons and James could not be located, Bob Bass provided evidence that it is the business custom of Correctional Services Corporation to provide an application, an at-will statement, and a handbook to each employee. Plaintiffs Lyons denies that he signed anything that states the employment was an at-will employment. (Supp. Aff. Lyons ¶ 1; Aff. Lyons ¶ 1 ). Plaintiff Heredia refused to sign the application and at-will statement, but received the handbook.

Defendant argues that these policy statements negate any objective, reasonable expectation of Plaintiffs that Defendant intended to alter the at-will status of employment. Individual Plaintiffs' claims are reviewed below with respect to the implied contract claims.

### i.     Joanne Bailey

Plaintiff Bailey was employed from December 1997 to July 15, 1998. Bailey asserts that she did not understand the at-will document. (Supp. Aff. ¶ 1). In December 1997, she claimed that Bob Bass offered her a job with Defendant and promised her that she would be a permanent employee if she took the job. See id. Previously, Bailey, in her interrogatories, stated that Defendant promised her permanent employment after six months of probation. (Ex. A-1 at 5). Bailey was terminated on July 15, 1998, after she was working for six months. Plaintiff Bailey's affidavit that Bob Bass promised her permanent employment after the initial six months of probation support her claim and expectation that she would be terminated only for cause. This creates an inference of implied contract because in New Mexico a promise or offer that supports an implied contract might be found

-9-

in written representations, such as an employee handbook, in oral representations, in the conduct of the parties, or in a combination of representations and conduct. See Hartburger, 115 N.M. at 669, 857 P.2d at 780; Newberry, 108 N.M. at 427, 773 P.2d at 1234 (upholding findings of implied contract based on employee manual, words, and conduct of the parties). Therefore, summary judgment must be denied as to Plaintiff Bailey on the theory of implied contract.

### ii.   Cynthia Vargas

Plaintiff Vargas was employed from June 30, 1997, to May 14, 1998. She denies signing the document titled "Employment at-Will." (Aff. Vargas ¶ 3). She also claims that Alanna Clawson (the personnel director at that time), Ray Jordan, Bob Bass, Todd Kemble, and Mr. Slattery (who were up the "chain of command" within the company) promised her during the training program that if she accepted the employment with CSC, she would be on probation for six months, and then would become a permanent employee. (Aff. ¶ 1; Supp. Aff. Vargas ¶ 1). On December 30, 1997, Plaintiff Vargas completed her probationary period. (Supp. Aff. Vargas ¶ 1.). She received promotions and good evaluations until April 1998. (See id.) Plaintiff Vargas further claims that Alanna Clawson, Bob Bass, and others up the "chain of command" within the company stated that permanent employees cannot be discharged unless an employee commits "something very bad, almost of a criminal nature." (See id.).

Based upon the Court's review of the admissible evidence submitted with the parties' briefs, the Court determines that Plaintiff Vargas has met her burden for the purpose of proving the existence of an implied contract. However, as is explained below in the discussion of the retaliatory discharge claim of Cynthia Vargas, Defendant has met its burden in showing that there was no

violation of the implied contract because Plaintiff Vargas was terminated for cause.  Summary judgment is granted as to Plaintiff Vargas on the theory of implied contract.

### iii.    Ida Berg

Plaintiff Berg was employed from February 26, 1998, through June 9, 1998.  She claims to have been terminated.  Defendant asserts that she voluntarily resigned.  Plaintiff Berg's purported resignation occurred after she was purportedly terminated.  Plaintiff claims that she did not sign the at-will documents initially, but Defendant forced her to sign the at-will statement by holding back one of her paychecks.  (Aff. Berg ¶ 3).  Plaintiff also claims that Bob Bass told her "not to worry about it" and that "it was a routine thing" at Correctional Services Corporation.  She also states that Bass assured her that she could only be fired for cause.  (Supp. Aff. Berg ¶ 1).  These circumstances create an issue of fact as to whether or not Plaintiff should have an objective expectation regarding the existence of implied contract.  Summary judgment is denied as to Plaintiff Berg on the theory of implied contract.

### iv.    Michael Heredia

Plaintiff Heredia was employed from June 30, 1997, through July 17, 1998.  He states that he did not sign that portion of the application that acknowledges the at-will status of the employment.  He also states that he did not sign the at-will employment statement signed by all other employees.  (Aff. Heredia ¶ 3).  He contends that he was informed by Peter Sosa and Todd Kemble, Defendant's representatives, that after the six-month probationary period, he would become a permanent employee.  (Supp. Aff. Heredia ¶ 1 & 7).  Since he stayed for six months and was promised that he would become a permanent employee at that time, a genuine issue of fact exists

as to whether or not Defendant created a reasonable expectation of implied contract. Therefore, Defendant's summary judgment is denied on the theory of implied contract as to Plaintiff Heredia.

### v.   Frank Lyons

Plaintiff Lyons was employed from June 18, 1997, through June 9, 1998. He states that when he received a better job offer from another employer, the facility manager, Ray Jordon, offered some promotions and promised some additional benefits. (Supp. Aff. Lyons ¶ 1). Plaintiff Lyons also asserts that Jordon promised him that he could only be terminated for cause. (Supp. Aff. Lyons ¶ 1). This evidence is sufficient to give rise to an inference of reasonable expectation on the part of this employee that he would only be terminated for just cause. Therefore, Defendant's summary judgment motion on this claim must be denied as to Plaintiff Lyons.

### vi.   Andrew James

Plaintiff James was employed from June 24, 1998, through Novemver 8, 1998. In support of his claim of an implied contract, he states that when he questioned Bob Bass regarding the term of the employment, Bass' statements caused him to believe that he was employed on a permanent basis. (Supp. Aff. James ¶ 1). Bass told him "'we don't just up and fire people Andrew.'" (Id.) The Court concludes that such evidence is insufficient to create a reasonable expectation on the part of Plaintiff James that he would only be fired for just cause. Therefore, summary judgment on the claim of implied contract is granted as to Plaintiff James.

### vii.   Shea Barnes

Plaintiff Barnes was employed from April 13, 1998, through May 21, 1998—a period of one (1) month. She was terminated on May 21, 1998. Plaintiff states that she did not sign the at-will statement. (Supp. Aff. Barnes ¶ 2). She claims that she was told by Lavina Wytsalucy, the

personnel officer, that signing the at-will statement was "optional." (See id. at ¶ 1). However, it is undisputed that Plaintiff received the handbook and signed the application, both of which mention the at-will status of the employment. (Def. Ex. A, C, & E). Plaintiff states that Bass offered her various benefits, such as sick leave, vacation, and salary increases, and commended her for her work. (Supp. Aff. Barnes ¶ 2). Plaintiff claims that she was not an at-will employee, and could only be fired for cause, but she offers no evidence of specific promises that gave her such expectations. (See id.) The totality of the circumstances surrounding the employment relationship do not support a finding that the employer has made a promise that modified this employee's at-will status. See Newberry, 108 N.M. at 427, 773 P.2d at 1234. The employee handbook clearly alerted her of the at-will status of the employment. An examination of the record fails to disclose any specific promises made to Plaintiff Barnes regarding permanent employment. There are no written or oral expressions of permanent employment. Given the totality of the circumstances and resolution of all reasonable inferences in the light most favorable to Plaintiff Barnes, she failed to demonstrate a genuine issue for trial as to her claim for implied contract. Therefore, summary judgment is granted to Defendant on the claim of implied contract of Plaintiff Barnes.

### viii.   Christopher Webb

Plaintiff Webb was employed from March 2, 1998, through July 23, 1998. He claims that he believed that there was an implied contract because he was promised "a long period of employment, promotion opportunities," and other insurance benefits. (Ex. A-3 at 9). Plaintiff, however, also admits that Defendant promised him permanent employment after six months of probation. A promise by some unknown person regarding a "long period of employment" may not be enough to raise a genuine issue of material fact regarding an implied contract claim, more so in

the face of all the documentary evidence that should have alerted Plaintiff Webb of his at-will status. A vague or general feeling of continued employment is not sufficient to create an employment contract. _See_ Garrity, 121 N.M. at 713, 917 P.2d at 1385. The Court concludes that summary judgment should be granted to Defendant on Plaintiff Webb's implied contract claim.

### ix.   **Alvin Hawkinson**

Plaintiff Hawkinson was employed from June 23, 1997, through January 29, 1998. He does not dispute the fact that he signed the employment application which stated the employment was at-will. He does not dispute that he received the handbook or Defendant's employment at-will statement. (Supp. Aff. Hawkinson ¶ 1). He argues that he was under the impression that after a probationary period, he could only be terminated for cause. The only evidence Plaintiff Hawkinson points to in support of this assertion is the weekly staff meetings where Ray Jordon and other representatives of Defendant made statements that made him believe that he could only be discharged for cause. (See id.). Plaintiff Hawkinson does not specify what those statements were, or whether or not Jordon and the other representatives specifically told him about his long-term employment. Therefore, without any particular assurances to Plaintiff Hawkinson regarding the permanency of employment, it was not reasonable for him to expect that there existed an implied contract. Moreover, all the documents alerted Plaintiff Hawkinson of his at-will status of employment. Summary judgment is granted to Defendant as to this claim of Plaintiff Hawkinson.

### x.   **Larson Rogers**

Plaintiff Rogers was employed from June 30, 1997, through April 27, 1998. He claims that he could not recall signing any documents stating he was an at-will employee. Plaintiff Rogers alleges that "CSC promised me that if I accepted employment with CSC, I would be on probation

-14-

for six months and then would become a permanent employee." (Aff. Rogers ¶ 3). Plaintiff Rogers's claim lacks specificity. Further, he does not identify the persons who made such a promise. A plaintiff must present proof of a promise that is sufficiently explicit to give rise to reasonable expectations of termination for good cause only. See Hartbarger, 115 N.M. at 672. If the evidence of implied contract lacks specific contractual terms which might evidence the intent to form a contract, a court is justified in granting a directed verdict. Sanchez v. New Mexican, 106 N.M. 76, 78, 738 P.2d 1321, 1324 (1987). In the present case, Defendant is entitled to summary judgment against Plaintiff Rogers on his claim based upon implied contract.

### b. Retaliatory Discharge and Public Policy

The Court next analyzes Plaintiffs' claims of retaliatory discharge. New Mexico recognizes the tort of retaliatory discharge in cases where an employee is discharged for engaging in an act favored by public policy. See Vigil v. Arzola, 102 N.M. 682, 689 (Ct. App. 1983), rev'd in part on other grounds, 101 N.M. 687, 687 P.2d 1038 (1984), overruled in part on other grounds, Chavez v. Manville Prods. Corp., 108 N.M. 643, 777 P.2d 371 (1989). For an employee to recover under a retaliatory discharge claim, the employee "'must demonstrate that he was discharged because he performed an act that public policy has authorized or would encourage, or because he refused to do something required of him by his employer that public policy would condemn." Chavez, 108 N.M. at 647, 777 P.2d at 375 (quoting Vigil, 102 N.M. at 689, 699 P.2d at 620). The linchpin of a cause of action for retaliatory discharge is whether by discharging the complaining employee, the employer violated a "clear mandate of public policy." Shovelin v. Cent. N.M. Elec. Coop., Inc., 115 N.M. 293, 303, 850 P.2d 996, 1006 (1993). A finding that public-policy considerations are implicated is only the first step in evaluating whether the employee is entitled to pursue a retaliatory

discharge claim. In addition, the employee must demonstrate that his actions furthered a public interest, rather than served primarily a private interest. See Garrity v. Overland Sheepskin Co., 121 N.M. 710, 715, 917 P.2d 1382, 1387 (1996). So long as the employee's actions are not merely private or proprietary, but instead seek to further the public good, the decision to expose illegal or unsafe practices should be encouraged. See id. Finally, an employee seeking to recover for retaliatory discharge must show a causal connection between his protected action and his discharge. See Shovelin, 115 N.M. at 303, 850 P.2d at 1006. An employee fails to prove the causal connection necessary to sustain a claim for retaliatory discharge when there is no evidence that the persons responsible for his discharge had any knowledge that he is engaged in an activity alleged to be protected. See Lihosit v. I & W, Inc., 121 N.M. 455, 458, 913 P.2d 262, 265 (Ct. App. 1996).

Under New Mexico law, the retaliatory reason for the discharge need not be the only reason, nor the last, nor the latest reason for discharge. See NMUJI 12-2304 2001. Instead, plaintiffs need only establish by a preponderance of evidence that the protected conduct was a motivating factor in the discharge. See id. The employer's motive is a key element of retaliatory discharge. See Weidler v. Big J Enters., 124 N.M. 591, 599 (Ct. App. 1997). Direct evidence of an employer's motive is rare, as an employer will rarely admit to a retaliatory intent. See id. An employer's retaliatory intent may be inferred from the surrounding circumstances or indirect evidence. See id. (holding that a pretext for retaliatory discharge is found where employee was given good evaluations, but was terminated after reporting safety concerns, and where employer had a pattern of hostility to reports of safety concerns). The New Mexico Supreme Court found it unnecessary to adopt a standard that would shift the burden to the employer once the employee introduced the "'evidence of circumstances that justify an inference of retaliatory discharge motive, such as

-16-

protected conduct closely followed by adverse action.'" Lihosit, 121 N.M. at 459, 913 P.2d at 265 (citing Chavez, 108 N.M. at 648 n.2, 777 P.2d at 376 n.2).

Defendant contends that Plaintiffs have failed to identify a clearly mandated public policy. Defendant also argues that no public policy controls in this case because Plaintiffs' allegations essentially concern breach of contractual provisions between Defendant and its contracting party and, therefore, Plaintiffs fail to state a claim for retaliatory discharge. Defendant further argues that Plaintiffs failed to state clear public policy either under legislative enactment, or under some other expression of a concept fundamental to the democratic tradition.

Whether an employee has stated and identified a policy sufficient to recover under the tort of wrongful discharge is determined on a case-by-case basis. See Sanchez v. New Mexican, 106 N.M. 76, 79, 738 P.2d 1321, 1324 (1987). A clear mandate of public policy may be gleaned from the enactments of the legislature and the decisions of the courts. See Shovelin, 115 N.M. at 303, 850 P.2d at 1006. Contrary to Defendant's assertions, the "conditions in jails and prisons are clearly matters 'of great public importance.'" Houchins v. KQED, Inc., 438 U.S. 1, 8 (1978) (citing Pell v. Procunier, 417 U.S. 817, 870 n.7 (1974)). Penal facilities are public institutions which require expenditures of large amounts of public funds, and their mission is crucial within the context of our criminal justice system. See id. Each person placed in prison becomes, in effect, a ward of the state for whom society assumes broad responsibility. See id. Therefore, the Court rejects Defendant's arguments that Plaintiffs' complaints regarding prison conditions fail to identify a public policy concern.

Defendant further contends that Plaintiffs' grievances were essentially private grievances involving protection of Plaintiffs' own interests and were not involved in the protected activity for

-17-

the general well-being of the public at large.  However, all Plaintiffs with the exception of Plaintiffs

Rogers and Hooee stated in their affidavits and supplemental affidavits that they complained about

the prison conditions in furtherance of public interest and not their private interest. (Aff. Burrola ¶

2; Ex. A-1 &A-2; Supp. Aff. Burrola ¶ 2 &3, Aff. Berg 8,9, 10; Supp. Aff. 2, 3, 6; Aff. Hawkinson

¶ 2,3, &4; Ex. A-1; Supp. Aff. Hawkinson ¶ 2, 3, &6; Aff. Heredia ¶ 8; Ex. A-1; Supp. Aff. Heredia

¶ 2,3, & 5; Aff. James ¶ 5, 9, & 11; Ex. A-1; Supp. Aff. James ¶ 2, 3, 5, &6; Aff. Coan ¶ 2, 6, 8, &

9; Ex. A-1 & A-2; Supp. Aff. ¶ 2, 3, 5, & 6; Aff. Barnes ¶ 4;  Supp. Aff. Barnes ¶ 2 at 6-7, 3, 6; Aff.

Lyons ¶ 7,8,9, & 10; Ex. A-1; Supp. Aff. Lyons ¶ 2, 3, & 6; Supp. Aff. Bailey 2, 3, 5, & 6; Ex. A-1&

A-2 to Aff. Bailey; Aff. Webb ¶ 2 & 10; Ex. A-1 & A-2 at 8; Aff. Vargas ¶ 8 &9; Ex. A-1 at 6,7,

&8, Supp. Aff. Vargas 2, 3, 5, & 6).  Even though a "party's own affidavit, containing relevant

information of which he has first-hand knowledge, may be self-serving, . . . it is nonetheless

competent to support or defeat summary judgment." Cadle Co. v. Hayes, 116 F.3d 957, 961 n. 5 (1st

Cir. 1997) (citing Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 706 (1st Cir. 1993)).

        With the exception of Plaintiffs Rogers and Hooee as noted above, Plaintiffs' affidavits

provide specific factual information based upon their personal knowledge. The affidavits comply

with the requirements of the federal rules and the Court, therefore, considers them together with

other evidence.  In consideration of the foregoing, the Court finds that Plaintiffs' concerns are not

merely private grievances, but have public importance. Defendant also argues that Plaintiffs did not

report their concerns to an appropriate public entity to qualify for protection and, therefore, their

retaliatory discharge claim cannot survive.  In considering this contention, the Court does not find

any authorities which require that reports to an outside entity constitute an element of retaliatory

discharge under New Mexico law.  Further, the Court finds that, except for Plaintiffs Rogers and

Hooee, Plaintiffs have met their burden of showing a genuine issue of material fact as to whether Defendant had knowledge that Plaintiffs engaged in protected activity.

### c.    Just Cause and Non-Retaliatory Reasons for Discharge

Notwithstanding the existence of an act favored by public policy, an employer is absolved of liability if the employer had reasonable grounds to believe that sufficient cause existed to justify an employee's termination. See Kestenbaum, 108 N.M. at 27, 766 P.2d at 287. The employer's good faith belief should be judged on an objective standard and not through a subjective standard. See id. at 28, 766 P2d. at 288. Defendant argues that Plaintiffs were terminated for non-retaliatory reasons, or on the basis of just cause and, therefore, summary judgment should be granted on their retaliatory discharge and implied contract claims. Each Plaintiff's fact pattern is examined below to ascertain if Defendant's stated reasons for termination are merely pre-textual. The Court will not repeat, but does consider, the particular evidence summarized under the discussion above.

### i.    Alvin Hawkinson

Defendant contends that Plaintiff Hawkinson was terminated on January 29, 1998, because of his policy infractions, such as disobeying the schedule approved by the facility administrator, and leaving a medical key ring unsecured. (Ex. H, I, J, & K). Reprimand letters and internal investigation were dated January 13, 15, and 23, 1998. Plaintiff Hawkinson's evidence shows that he sent three memos regarding missing narcotics and inadequate medical equipment on September 12, 1997, October 7, 1997, and December 19, 1997. (Ex. B & D of Aff. Hawkinson; Aff. Hawkinson ¶ 2, 3, & 4). These actions on the part of Plaintiff Hawkinson appear to be closely followed by the reprimands and subsequent termination, thus creating a circumstantial inference of retaliation. Defendant, through its evidence, failed to show that it would have made the decision to

-19-

terminate Plaintiff Hawkinson, even if it had not taken his protected acts into account. Therefore, summary judgment on Plaintiff Hawkinson's retaliatory discharge claim is denied.

### ii.      Ida Berg

Defendant contends that Plaintiff Berg resigned from the job and was not terminated. (Ex. J). Plaintiff Berg argues that there was a termination. (Aff. Berg. ¶ 5, 12-14; Ex. K, Dep. Berg at 4; Supp. Aff. Berg ¶ 7). Plaintiff Berg demonstrates through her affidavit that she expressed concerns regarding the lack of medical records, improper medical care, and unequal medical treatment among inmates. (Aff. Berg ¶ 8,9, & 10; Ex. K, Dep. Berg at 5-6). It is undisputed that Plaintiff Berg received favorable evaluations on two separate occasions before her departure. She was promoted in March, 1998—a month after she started her employment with Defendant and received a commendation for her work on April 29, 1998. (Ex. G & I). As it is disputed whether Plaintiff Berg was terminated for cause—a material issue of fact—summary judgment is denied on her claim of retaliatory discharge.

### iii.      Cynthia Vargas

Defendant argues that Plaintiff Vargas committed multiple violations and, therefore, it was reasonable to discharge her. The undisputed evidence consists of Plaintiff Vargas's violations of Defendant's policy—use of excessive force—on March 23, 1998. (Ex. G & I). Plaintiff Vargas was demoted from the rank of lieutenant to sergeant as a result of the investigation on April 8, 1998. (Ex. H). She was placed on probation. (Ex. I). On April 13, 1998, Plaintiff Vargas violated Defendant's certain "chain of command" policy by issuing a memorandum and was reprimanded for such violation. (Ex. J, K). On April, 21, 1998, Plaintiff Vargas improperly entered female unit pods that were under the supervision of other personnel. (Ex. L; M; & N). On May 1, 1998, an

internal investigation was conducted regarding Plaintiff Vargas's release of an inmate for an inadequate amount of bond. (Ex. Q). Plaintiff Vargas was terminated on May 14, 1998 as a result of the May 1, 1998 incident and some disputed incidents on April 29 and 30, 1998.

Plaintiff Vargas argues that she received commendations and promotions until April 1998. Plaintiff Vargas also states that she complained to Mr. Bass regarding the overcrowding and other inadequate security conditions at the facility. (Ex. A-1 at 6-7 to Aff. Vargas). Specifically, she expressed her concerns about rape of an inmate by another inmate. (see id.). Plaintiff Vargas states that because of her continued complaints, she was disparaged at management meetings by Bass and CSC management. (See id.). Plaintiff Vargas states that Bob Bass used profanities toward her at a staff meeting and expressed his desire to terminate her. (Supp.Aff. Vargas ¶ 9 & 10). The undisputed facts clearly reflect Plaintiff Vargas's job performance problems. Defendant has met its burden in showing that non-retaliatory reasons were the motivating factor resulting in Plaintiff's Vargas's termination. Therefore, summary judgment is granted as to Plaintiff Vargas's retaliatory discharge claim.

### iv.   **Frank Lyons**

Defendant argues that Plaintiff Lyons was discharged because he is ill-suited to work in a prison atmosphere. Defendant specifically cites two violations: (1) serving outdated milk on May 27; and (2) volatile conduct toward Cynthia Vargas on September 28, 1997. (Ex. B & C). Plaintiff Lyons contends that he received favorable evaluations two months before his termination (Aff. Lyons ¶ 4) and that he complained regarding the inadequate security, overcrowding, and inadequate kitchen equipment. (Aff. Lyons ¶ 7 & 8). He states that he never served spoiled milk to inmates and contends that he served milk that was fresh and always in compliance with the federal

regulations. (Aff. Lyons ¶ 6 & 7). The September 28, 1997, incident occurred some nine months prior to his termination on June 9, 1998. In the interim, Plaintiff Lyons received favorable evaluations two months before his termination on June 9, 1998. As for the incident on May 27, it is disputed whether Plaintiff served spoiled milk in violation of federal regulations or merely outdated milk and whether that justified termination. In light of the above, summary judgment must be denied as to Plaintiff Lyons's retaliatory discharge claim.

### v.      Andrew James

Defendant argues that Plaintiff James did not properly follow the "chain of command" and he was, therefore, discharged. (Ex. C). It is undisputed that Plaintiff James was terminated immediately after he contacted officials in the State of Montana and advised of inadequate dental and psychiatric treatment services received by the Montana inmates. Defendant contends that Plaintiff James made false statements to Montana officials regarding lack of on-site dental facilities. Plaintiff James disputes this fact and adds that he did not report to the officials, but merely answered the inquiries regarding on-site facilities. (Ex. A at 6 to Aff. James; Supp. Aff. ¶ 2 at 6). As it is disputed whether or not Plaintiff James disobeyed "chain of command" issues, Defendant failed to meet its burden that Plaintiff James was discharged for non-retaliatory reasons or based upon just cause. Therefore, summary judgment is denied as to Plaintiff James's retaliatory discharge claims.

### vi.      Bertha Coan

Defendant argues that Plaintiff Coan was terminated because of her performance problems and asserts that she was involved in serious policy infractions and was counseled on February 7, 1998, for passing notes to inmates and on April 24, 1998, for sleeping while on duty. (Ex. G & H). Plaintiff Coan argues that, on or about May 10, 1998, she complained about the various conditions

at the facility, such as inadequate space to house inmates, inadequate staffing, and inadequate security at the prison. (Aff. Coan ¶¶ 7 & 8).  Plaintiff Coan testified that she raised some of her concerns with Lieutenant Stalford in May 1998.  (Aff. Coan ¶ 9; Supp. Aff. ¶ 2).  Further, Plaintiff Coan denies signing the employee counseling statements and testified that Defendant sent her to Montana on job-related business during the time she was allegedly counseled.  (Aff. Coan ¶ 4).  As there are genuine issues of material fact regarding whether or not Plaintiff Coan was discharged based upon her poor work performance, summary judgment is denied as to Plaintiff Coan's claim for retaliatory discharge.

### vii.   Shea Barnes

Defendant contends that Plaintiff Barnes was terminated because she took pictures of Montana inmates, which was prohibited by the Montana contract.  Defendant also points to the complaint filed by Plaintiff Barnes with the New Mexico Human Rights Division in which she did not raise the retaliatory discharge claim, but rather asserted racial discrimination.  (Ex. I).  Plaintiff Barnes states in her affidavit that upon her return from Montana on May 10, 1998, she complained regarding inadequate space resulting in inmate hostility.  (Supp. Aff. ¶ 2 at 5, 6, &7).  Plaintiff Barnes also states that she met with Mr. Bass and Todd Kemble of CSC to discuss inadequate security, inadequate security training for employees, and inadequate space to provide certain counseling services to the inmates.  (See id.).  With respect to the photo-taking incident, Plaintiff Barnes asserts that the Montana contract does not completely prohibit taking photos of inmates, but only prohibits releasing photographs of the inmates without the express consent of the inmates.  (Ex. K).  A genuine issue of fact exists as to whether or not Plaintiff Barnes's termination resulted from

retaliation or just cause, warranting denial of summary judgment as to her retaliatory discharge claim.

### viii.    Christopher Webb

Defendant argues that Plaintiff Webb was terminated because of policy infractions. Defendant contends that he was terminated because he was delivering cigarettes and drugs to inmates and allowed an inmate to kiss another inmate. (Ex. F). Plaintiff Webb denies doing any of these acts and contends that Defendant's allegations are complete fabrications. (Aff. Webb ¶ 5,6, & 7). Plaintiff Webb also contends that during the course of his employment with CSC, he expressed his concerns to his superiors regarding inadequate security, training, space, and facilities. (Ex. A-1 to Aff. Webb). Plaintiff Webb states that he demanded the removal of certain inmates from the kitchen after he became aware that they suffered from hepatitis; he was terminated thereafter. (See id.) As there are genuine issues of material fact regarding whether or not Plaintiff Webb was discharged for retaliatory reasons, summary judgment is denied as to his retaliatory discharge claim.

### ix.    Joanne Bailey

Plaintiff Bailey's termination letter states that she was terminated because of the numerous counseling statements regarding her negative performance of duty and security violations. (Ex. M). The letter specifically cites three incidents on January 4, June 8, and July 8, 1998. Plaintiff Bailey disputes the incident on July 8, and contends that the counseling statement is fake. (Aff. Bailey ¶ 6). Plaintiff Bailey does not deny the other two incidents. (Ex. K & J). Defendant did not immediately terminate Plaintiff Bailey on account of these instances of misconduct, rather waited until a month after the incidents. Plaintiff Bailey's termination resulted shortly after she submitted a memorandum to Bob Bass on June 15, 1998, regarding the various prison policy violations, such

as finding brass knuckles in the kitchen area, and employees bringing food items into the jail for the inmates. (Ex. E). The undisputed facts viewed in the light most favorable to the Plaintiff are sufficient to support a claim for retaliatory discharge. Summary judgment should is thus denied as to this claim of Plaintiff Bailey.

### x.   Michael Heredia

Defendant argues that there was a reorganization and that Plaintiff Heredia's job had been eliminated, but they offered him a different job with the same pay. Undisputed facts show that Plaintiff Heredia's job had been eliminated. Defendant offered Plaintiff Heredia a different position with the same annual pay, but with salary exempt status. (Ex. E1). Defendant's evidence shows that there had been reassignment of two other employees apart from Plaintiff Heredia. (Ex. E.1; Memo. to Employee Warner; Memo to Employee Billy). One of the memos addressed to Ms. Warner was dated July 12, 1998. Plaintiff Heredia states that, during the staff meetings, there were never any discussions regarding reorganization. The evidence also shows that, on July 13, 1998, Plaintiff Heredia submitted a memorandum regarding the prison conditions to his supervisor Ms. Mableson. (Ex. F). Plaintiff Heredia states that prior to July 13, 1998, there was no discussion at any staff meetings he attended regarding the reorganization or abolishing of his position. (Aff. Heredia ¶ 5). Further, there is no evidence that the reorganization was in the works for a long period of time. Plaintiff Heredia states that he made numerous verbal complaints about the unsafe conditions at the facility. (Aff. Heredia ¶ 8). Mr. Billy's pay was not salary exempt like Plaintiff Heredia's, even though his job was affected by the reorganization. It is undisputed that Plaintiff Heredia was offered a different position with the same pay, but with salary exempt status, and that he declined to accept the position. Plaintiff Heredia considers himself to be terminated without just cause because he was

offered a different position with lesser benefits. Because Plaintiff Heredia's complaints—both verbal and written—were closely followed by Defendant's elimination of his job, an inference of retaliation exists. Therefore, summary judgment is denied as to Plaintiff Heredia's retaliatory discharge claim.

### xi.    Theresa Burrola

Plaintiff Burrola complained to the authorities regarding certain conditions at the prison and her termination resulted shortly afterwards. (Aff. Burrola-George ¶ 1). Defendant argues that Plaintiff Burrola was terminated on August 3, 1998, because of the at-will status of her employment. (See Ex G). Defendant further argues that Plaintiff Burrola had no personal knowledge of the medical conditions of the inmates working in the kitchen, and she only heard rumors, which constitute inadmissible hearsay, and she, therefore, cannot prove any protected activity. The relevant inquiry is whether Plaintiff Burrola engaged in protected activity and was terminated shortly thereafter. It is immaterial whether or not she had first-hand knowledge of those conditions. Further, she states that she complained about improper lock-down procedures for kitchen equipment, such as knives, blades, peelers, etc. (Ex. I, Dep. Burrola at 32-34). Plaintiff Burrola's termination appears to have occurred soon after her complaints. (Supp. Aff. ¶ 2). As Defendant did not articulate any performance problems as a basis for termination, Defendant did not rebut Plaintiff Burrola's inference of retaliation. Therefore, summary judgment is denied as to Plaintiff Burrola's retaliatory discharge claim.

### 2.    Intentional Infliction of Emotional Distress

Under New Mexico law, in order to prove intentional infliction of emotional distress, the claimant must show that (1) the tortfeasor's conduct was extreme and outrageous under the

circumstance; (2) the tortfeasor acted intentionally or recklessly; and (3) as a result of the conduct, the claimant experienced severe emotional distress. See NMUJI 13-1628 2001.

To satisfy the first element—extreme and outrageous conduct—the defendant's conduct must go beyond all possible bounds of decency and has to be regarded as atrocious and utterly intolerable in a civilized community. See id. Generally, if the recitation of the facts to an average member of the community would arouse his resentment against the actor and lead him to exclaim "outrageous," such conduct may qualify as extreme and outrageous. See NMUJI 13-1628 2001; Dominguez v. Stone, 97 N.M. 211, 214, 638 P.2d 423, 426 (1981) (quoting Restatement (Second) of Torts, § 46 (1965)). It is not enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice" or a degree of aggravation, which would entitle the plaintiff to punitive damages for another tort. Liability is found only where the conduct has been so outrageous in character and so extreme in degree. It must go beyond all possible bounds of decency and has to be regarded as atrocious and utterly intolerable in a civilized community. See Dominguez, 97 N.M. at 214, 638 P.2d at 426. Complete emotional tranquility is seldom attainable in this world, and some degree of transient and trivial emotional distress is part of the price of living among people. See id. The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. None of the Plaintiffs in this case allege or demonstrate such a degree of emotional distress. Plaintiffs claim emotional distress because of the termination of their jobs, the possibility of a consequent bad reputation, the conditions at the workplace, and Defendant's name calling while working at the facility. Assuming Plaintiffs correctly portray Defendant's behavior and conduct, it does not rise to the level of satisfying the elements of intentional infliction of

-27-

emotional distress.  Therefore, Defendant is entitled to summary judgment against all Plaintiffs on this count.

Plaintiff Berg in her supplemental affidavit claims that she suffered a miscarriage because of the emotional distress she endured at work.  However, in her deposition testimony, she stated that the doctors cannot pinpoint what caused her miscarriage.  (Ex. E to Def.'s Mot. to Dismiss Ida Berg's Complaint, or Alternatively to Strike Evidence and Compel responses to Def.'s First Set of Discovery or for Dismissal; Dep. Berg at 55).  Therefore, Defendant is entitled to summary judgment as to Berg's claim of intentional infliction of emotional distress, and that of all other Plaintiffs.

### 3.    Prima Facie Tort

The elements of prima facie tort are (1) defendant's lawful, but intentional act; (2) defendant's intent to injure the plaintiff; (3) injury to the plaintiff; and (4) no justification for defendant's acts.  Schmitz v. Smentowski, 109 N.M. 386, 394, 785 P.2d 726, 734 (1990).  The purpose of this tort is " to provide [a] remedy for intentionally committed acts that do not fit within the contours of accepted torts."  Id. at 396.  Thus, prima facie tort should not be used to evade stringent requirements of other established doctrines of law.  Id. at 398; accord Yeitrakis v. Schering-Plough Corp., 804 F. Supp. 238, 249 (D.N.M. 1992).  Prima facie tort should not be permitted to duplicate or remedy a defect in another established cause of action.  See Andrews v. Stallings, 119 N.M. 478, 493, 892 P.2d 611 (Ct. App. 1995).  If Plaintiffs allege one of the two recognized exceptions to at-will employment, that is—either under the implied contract or retaliatory discharge—neither acts are lawful by their nature and, therefore, the first element of prima facie tort cannot be met.  However, even assuming the termination is carried out in accordance

-28-

with the employment at-will doctrine, then the act is lawful, but it will not satisfy the second element

of "intent to injure" because injury must be to a legally-protected interest. Under the established

doctrine of employment at-will, Plaintiff has no legally-protected interest in either continued

employment or termination for a cause. Hill v. Cray Research, Inc., 864 F.Supp. 1070, 1078-79

(D.N.M. 1991). Therefore, summary judgment is granted on Plaintiffs' claims for prima facie tort.

### 4.    Fraud

In order to properly plead a fraud claim, Fed R. Civ. P. 9(b) requires that the

circumstances constituting fraud must be pleaded with particularity. See Fed. R. Civ. P. 9(b). A

complaint under Rule 9 must set forth the time, place, and contents of the false representations, the

identity of the party making the false statements, and the consequences thereof. See Schwartz v.

Celestial Seasonings, Inc., 124 F.3d 1246, 1252 (10th Cir. 1997). In the context of fraud claims,

Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what

documents, or oral representations, or what omissions were made; (2) the time, place, and contents

of the false representations or omissions, and the person responsible for making the

misrepresentations; (3) the content of such statements and the manner in which they misled the

plaintiff; and (4) what the defendants obtained as a consequence of the fraud. See Ziemba v.

Cascade Int'l Inc., 256 F.3d 1194, 1202 (11th Cir. 2001). A plaintiff must set forth an explanation

of what is false or misleading about a statement and why it is false. See United States v. Cheng, 184

F.R.D. 399, 402 (D.N.M. 1998). Malice, intent, knowledge, and other conditions of the mind of a

person may be averred generally. See Fed. R. Civ. P. 9.

Plaintiffs' complaint does not meet this test. It states that "CSC falsely represented to

Plaintiffs that CSC would provide Plaintiffs with the pay and benefits ..., and that they would

-29-

become permanent employees after completing a six month probationary period. CSC also falsely represented that it would properly train Plaintiffs, properly train Plaintiffs' co-employees, and provide Plaintiffs with a safe working environment." (See Compl. ¶ 178). Plaintiffs also state that Defendant knew that its representations, including, but not limited to, its representations about the permanency of Plaintiffs' employment, and about the benefits that Plaintiffs would receive, were false when they made them. (See id. at ¶ 179). The state of Plaintiffs' pleading on this claim is, at best, general and vague. It is silent on the time, place, and identity of the parties making misrepresentations. The Court finds that the allegations in Plaintiffs' complaint fail to meet all the elements of fraud under the Rule 9(b) standard. Therefore, Plaintiffs' fraud claim is not valid and must be dismissed.

### 5.    **Constructive Fraud**

Constructive fraud occurs upon a breach of legal or equitable duty, irrespective of the moral guilt of the fraud-feasor. It is not necessary to prove dishonesty of purpose, nor intent to deceive, to maintain a cause of action for constructive fraud. See Wolf and Klar Cos. v. Garner, 101 N.M. 116, 118, 679 P.2d 258, 260 (1984). Plaintiffs claim constructive fraud because Defendant falsely represented to Plaintiffs that they would become permanent employees and that Defendant would provide Plaintiffs with various benefits.

Plaintiffs' constructive fraud claim for benefits, such as sick leave, vacation, and other benefits, are preempted by ERISA. Section 514(a) of ERISA states that the statute " shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a). State laws that relate to ERISA plans, even if they are not specifically designed to have that effect, or do so only indirectly, are preempted. See Rokohl v.

Texaco, Inc., 77 F.3d 126, 129 (5th Cir. 1996).  This preemption may extend to state fraud claims.

See Smith v. Tex. Children's Hosp., 84 F.3d 152, 156-57 (5th Cir. 1996).  The gravamen of

Plaintiffs' constructive fraud claim  with regard to various benefits is that Defendant misled them

or misrepresented their entitlement to benefits.  Uncoupling the ERISA benefits from Plaintiffs'

constructive fraud claim would delete the subject of Defendant's alleged misrepresentations.

Consequently, Plaintiffs' claims would cease to exist.  The Court, therefore, concludes that

Plaintiffs' constructive fraud claim, with regard to various benefits, is preempted.

As for Plaintiffs' constructive fraud claim based upon the false representations regarding

permanent employment, Defendant argues that New Mexico law does not recognize constructive

fraud claims in the context of employment at-will contracts.  Plaintiffs fail to point to authority to

the contrary.

The general rule in New Mexico is that an employment contract is for an indefinite period

and is terminable at the will of either party, unless the contract is supported by consideration beyond

the performance of duties and payment of wages, and an explicit contract provision stating

otherwise. See Hartbarger, 115 N.M. at 668, 857 P.2d at 779.  Exceptions to this general rule are

(1) wrongful discharge in violation of public policy (retaliatory discharge); (2) implied contract that

restricts the employer's discharge; and (3) tortious or contractual breach of an implied covenant of

good faith and fair dealing. See Melnick v. State Farm Mut. Auto. Ins. Co., 106 N.M. 726, 730, 749

P.2d 1105, 1109 (1988).  New Mexico recognizes only the first two exceptions and refused to

recognize the third exception. See id.  Regarding the claim of constructive fraud, the material fact

alleged by Plaintiffs was that Defendant did not disclose that its offer was "at-will" employment.

However, as noted earlier, in New Mexico, an aggrieved party can bring the action only under the

-31-

two recognized exceptions, i.e. retaliatory discharge and implied contract. Until New Mexico courts recognize additional exceptions, this Court cannot recognize a new cause of action. To do so would undermine state sovereignty. Therefore, Plaintiff's constructive fraud claims must be dismissed.

### 6.   Breach of implied covenant of good faith and fair dealing

New Mexico common law has recognized breach of implied contract and retaliatory discharge as two exceptions to this doctrine and has rejected a third—the implied covenant of good faith and fair dealing. See Silva v. Am. Fed'n of State, County & Mun. Employees, 131 N.M 364, 366, 37 P.3d 81, 83 (2001) (citing Melnick, 106 N.M. at 730, 749 P.2d at 1109). In Melnick, the New Mexico Supreme Court held that a directed verdict is proper for a claim of breach of implied covenant of good faith and fair dealing, not because there was a complete absence of evidence to support the plaintiff's claim, but because in New Mexico implied covenant of good faith and fair dealing in an at-will employment relationship is not recognized. See id. at 729-30. For these reasons, Plaintiffs' claims for breach of an implied contract of good faith and fair dealing must be dismissed as a matter of law.

### 7.   Failure to pay wages

In support of their claim for lost wages, Plaintiffs state that they never received payment from Defendant for any accrued sick days, vacation days, or other accrued benefits. Additionally, Plaintiffs also state that, because they were permanent employees, they lost wages that would have been received had they not been wrongfully terminated.

As for payments from Defendant for accrued sick days, vacation days, and other benefits, such claims are preempted by ERISA. See e.g. Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41 (1987);

Ingersoll-Rand Co. v. McClendon, 498 U.S. 133 (holding that causes of action stemming from termination allegedly caused to avoid payment of pension benefits was preempted by ERISA).

The relevant provision of Section 510 provides that "[i]t shall be unlawful for any person to discharge, fine, suspend, expel  . . . against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such a participant may become entitled under the plan." Felton v. Unisource Corp., 940 F.2d 503, 512 (9th Cir. 1991).  The emphasis of Section 510 is to prevent persons and entities from taking actions which might cut off or interfere with a participant's ability to collect present or future benefits.  In order to enforce the terms of a plan under Section 502, a participant must first qualify for the benefits provided in that plan.  See 29 U.S.C. § 1132.  Rather than concerning itself with these qualifications, one of these actions which Section 510 makes unlawful is the interference with a participant's ability to meet these qualifications in the first instance.  Plaintiffs seem to be alleging that either Defendant wrongfully deprived them of the benefits for which they were eligible, or terminated them wrongfully to avoid payment of benefits which they  would become entitled to receive.  In either case Section 510 preempts the claim.

As for the lost wages, only Lyons, Bailey, and Barnes are claiming Defendant's failure to pay overtime wages and reimbursement of travel and other expenses.  (Ex. A-6 to Aff. Lyons; Ex. A-6 to Aff. Bailey; Aff. Barnes ¶ 6).  Defendant's accountant's affidavit states that there are no outstanding claims.  Because a disputed fact exists as to whether or not Defendant paid full payment, summary judgment is denied with regard to these claims of Plaintiffs Lyons, Bailey, and Barnes.

Plaintiff Hawkinson claims the value of a lab coat that he did not claim because of his termination. As this is not equivalent to Defendant's failure to pay wages, summary judgment is granted to Defendant as to this claim of Plaintiff Hawkinson.

As for the remaining Plaintiffs, they do not appear to make claims for past wages due. Therefore, summary judgment is granted to Defendants against all Plaintiffs, except as noted above with respect to Plaintiffs Lyons, Barnes, and Bailey.

### 8.   Defamation

A communication is defamatory if it tends so to harm the reputation of another, so as to lower him in the estimation of the community, or to deter third persons from associating or dealing with him. See Dominguez, 97 N.M. at 213, 638 P.2d at 425. The elements of defamation are as follows:  (1) a defamatory communication; (2) published by the defendant; (3) to a third person; (4) of an asserted fact; (5) of and concerning the plaintiff; and (6) proximately causing actual injury to the plaintiff. See Newberry, 108 N.M. at 429, 773 P.2d at 1236. A statement is considered "libelous per se" if without reference to extrinsic evidence and viewed in its plain and obvious meaning, the statement imputes to plaintiff the commission of some criminal offense involving moral turpitude; affliction with some loathsome disease, which would tend to exclude the person from society; unfitness to perform duties of office, or employment for profit, or the want of integrity in discharge of the duties of such office or employment; some falsity which prejudices plaintiff in his or her profession or trade; or unchastity of a woman. See Newberry, 108 N.M. at 429, 773 P.2d at 1236 (citing Marchiondo, 98 N.M. 282, 287-88, 648 P.2d 321, 326-27 (Ct. App. 1981)).

In the present case, it is not clear what exact words were spoken by Bob Bass. Plaintiffs fail to identify the statements with particularity, and the circumstances under which they were made.

-34-

Plaintiffs generally allege that Bass commented on their poor job performance. Plaintiffs fail to attribute a specific statement purportedly made by Bass to a particular Plaintiff. The Court finds that the allegation, pleading, and evidence submitted in support of the defamation claim is insufficient to overcome summary judgment. Summary judgment is granted as to all Plaintiffs as to this claim.

**D.      CSC's Motion for Summary Judgment Against
         Plaintiffs Frederick Lewis and Michael Heredia**

With regard to *CSC's Motion for Summary Judgment Against Plaintiffs Frederick Lewis and Michael Heredia* (Doc. No. 48), the Court previously granted summary judgment to Defendant on Plaintiff Lewis' claims. As Plaintiff Heredia's claims already have been analyzed in the preceding discussion of Defendant's motion to dismiss and for summary judgment against all Plaintiffs, further analysis of Defendant's remaining motion as to Plaintiff Heredia is redundant and unnecessary. Therefore, *CSC's Motion for Summary Judgment Against Plaintiffs Frederick Lewis and Michael Heredia* (Doc. No. 48) is denied in part as moot with respect to Plaintiff Heredia.

**E.      Defendant's Motion to Dismiss Ida Berg's Complaint or,
         Alternatively, to Strike Evidence and Compel Response to
         Defendant's First Set of Discovery or for Dismissal**

The Court next addresses, in part, *Defendant's Motion to Dismiss Ida Berg's Complaint or, Alternatively, to Strike Evidence and Compel Response to Defendant's First Set of Discovery or for Dismissal* (Doc. No.175). The deadline for filing motions relating to discovery expired on June 1, 2002. (Doc. No. 118.) Therefore, Defendant's motion to compel a response to Defendant's first set of discovery is denied as untimely.

**III.   CONCLUSION**

**IT IS THEREFORE ORDERED** that *Defendant's Motion to Strike Plaintiffs' Supplemental Affidavits* is **DENIED**.

**IT IS FURTHER ORDERED** that *Correctional Services Corporation's Motion to Dismiss and for Summary Judgment* (Doc. No. 89) is **GRANTED IN PART** and **DENIED IN PART** as follows:

Summary judgment is **DENIED** as to Plaintiffs Joanne Bailey, Ida Berg, Mici. and Frank Lyons on the theory of implied contract.

Summary judgment is **GRANTED** as to Plaintiffs Andrew James, Shea Barnes, C Webb, Alvin Hawkinson, Larson Rogers, Lojann Hooee, and Cynthia Vargas on the tl implied contract.

Summary judgment is **DENIED** as to Plaintiffs Alvin Hawkinson, Ida Berg, Frank . Andrew James, Bertha Coan, Shea Barnes, Christopher Webb, Joanne Bailey, Michael Heredia, and Theresa Burrola on the theory of retaliatory discharge.

Summary judgment is **GRANTED** as to Plaintiffs Cynthia Vargas, Larson Rogers, and Lojann Hooee on the theory of retaliatory discharge.

Summary judgment is **GRANTED** as to all Plaintiffs on the claim of intentional infliction of emotional distress.

Summary judgment is **GRANTED** as to all Plaintiffs on the theory of prima facie tort.

Summary judgment is **GRANTED** as to all Plaintiffs on the claim of fraud.

Summary judgment is **GRANTED** as to all Plaintiffs on the claim of constructive fraud.

Summary judgment is **GRANTED** as to all Plaintiffs on the claim of breach of implied covenant of good faith and fair dealing.

Summary judgment is **DENIED** as to Plaintiffs Frank Lyons, Joanne Bailey, and Shea Barnes on their claim of failure to pay wages; summary judgment is **GRANTED** on this claim as to the remaining Plaintiffs.

Summary judgment is **GRANTED** as to all Plaintiffs on the claim of defamation.

The implied contract claims of Plaintiffs Bertha Coan and Theresa Burrola are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that *CSC's Motion for Summary Judgment against Plaintiffs Frederick Lewis and Michael Heredia* is **DENIED AS MOOT** with respect to Plaintiff Michael Heredia.

**IT IS FURTHER ORDERED** that *Defendant's Motion to Dismiss Ida Berg's Complaint or, alternatively, to Strike Evidence and Compel Responses to Defendant's First Set of Discovery or for Dismissal* is **DENIED IN PART**, so far as it relates to compelling Ida Berg's responses to Defendant's first set of discovery.

**SO ORDERED**, this 6th day of January, 2003, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
*United States District Judge*

-37-